UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Kelly Carlson,

      Plaintiff,

v.                                                                    Case No. 21-10810

Michael McCuaig, *et al.*,                          Sean F. Cox
                                                                     United States District Court Judge

      Defendants.

_____/

**OPINION & ORDER**
**GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT MCCUAIG**
**AS TO COUNT II AND DECLINING TO EXERCISE SUPPLEMENTAL**
**JURISDICTION OVER REMAINING STATE-LAW CLAIMS**

Plaintiff Kelly Carlson was pulled over by Michigan State Troopers Michael McCuaig

and Gregory Nichols in May of 2018.  After those two officers performed field sobriety and

other tests, a third officer (Eric Whitcomb) performed additional testing at the police station and

Plaintiff was ultimately charged with operating while intoxicated – third offense.  Trooper

McCuaig later went to Plaintiff's residence in October of 2018, with a valid arrest warrant, and

arrested Plaintiff.  Thereafter, Plaintiff filed this action against all three officers.  The action is in

federal court based upon Plaintiff's § 1983 count, which is asserted against Defendant McCuaig

alone.  Plaintiff asks the Court to exercise supplemental jurisdiction over two state-law claims,

violation of Michigan's Persons with Disabilities Civil Rights Act and sex discrimination in

violation of Michigan's Elliott-Larsen Civil Rights Act.

The matter is currently before the Court on Defendants' "Motion to Dismiss Or

Alternatively For Summary Judgment On The Basis of Qualified Immunity."  The parties have

briefed the issues and the Court held a hearing on October 21, 2021.  As explained below, this

Court grants summary judgment in favor of Defendant McCuaig as to Plaintiff's § 1983

excessive-force claim against him because McCuaig is entitled to qualified immunity.  The Court

declines to exercise supplemental jurisdiction over Plaintiff's state-claim claims and dismisses

those claims without prejudice.

## BACKGROUND

Plaintiff Kelly Carlson filed this action, asserting claims against the following three

Defendants: 1) Michael McCuaig; 2) Gregory Nichols; and 3) Eric Whitcomb.  Plaintiff's

Complaint asserts the following claims against them: 1) "Violation of the Michigan Persons with

Disabilities Civil Rights Act" (Count I); 2) "42 USC § 1983: Violation Of Plaintiff's Fourth

Amendment Rights" (Count II); and 3) "Sex Discrimination In Violation Of Michigan Elliott-

Larsen Civil Rights Act, MCLA 37.2201 *et seq.*" (Count III).

The action was filed in federal court based upon federal-question jurisdiction over

Plaintiff's § 1983 claim set forth in Count II – which is asserted against Defendant McCuaig

alone.  Plaintiff asks the Court to exercise supplemental jurisdiction over her state-law claims

asserted in Counts I and III.

Count II alleges that Defendant McCuaig violated Plaintiff's Fourth Amendment Rights

as follows:

> 66.    Defendant McCuaig's conduct deprived plaintiff of her right to be free of
> unreasonable searches and seizures, pursuant to the Fourth Amendment to
> the United States Constitution.
> 67.    Defendant Michael McCuaig used excessive force during the arrest of
> Plaintiff when he approached her home alone in the evening time, asked
> plaintiff if she remembered him, entered her home, tackled and pinned her
> to the ground, and pressed her face into the carpet, even though Plaintiff
> did not pose a threat to officer safety, and Defendant McCuaig did not

announce that he had a warrant for Plaintiff's arrest.

(Compl. at ¶¶ 66-67).

In responding to the pending motion, however, Plaintiff only discusses her § 1983 count as asserting an excessive force claim against McCuaig. Plaintiff does not mention or discuss any other § 1983 claim against McCuaig. At the October 21, 2021 hearing, Plaintiff's counsel confirmed that the only claim that Plaintiff is asserting in this case is her excessive force claim against Defendant McCuaig.

This Court's practice guidelines are included in the Scheduling Order and provide, consistent with Fed. R. Civ. P. 56, that:

> a. The moving party's papers shall include a separate document entitled Statement of Material Facts Not in Dispute. The statement shall list in separately numbered paragraphs concise statements of each undisputed material fact, supported by appropriate citations to the record. . .
>
> b. In response, the opposing party shall file a separate document entitled Counter-Statement of Disputed Facts. The counter-statement shall list in separately numbered paragraphs following the order or the movant's statement, whether each of the facts asserted by the moving party is admitted or denied and shall also be supported by appropriate citations to the record. The Counter-Statement shall also include, in a separate section, a list of each issue of material fact as to which it is contended there is a genuine issue for trial.
>
> c. All material facts as set forth in the Statement of Material Facts Not in Dispute shall be deemed admitted unless controverted in the Counter-Statement of Disputed Facts.

(Scheduling Order at 2-3).

Defendants complied with the Court's practice guidelines for summary judgment motions such that their motion includes a "Statement of Material Facts Not In Dispute" ("Defs.' Stmt.") (ECF No. 12) and Plaintiff included a "Counter-Statement of Disputed Facts" (Pl.'s Stmt.") (ECF No. 17).

Plaintiff's Statement, however, does not include a section that lists any issues of material fact as to which Plaintiff contends there is a genuine issue for trial.  (ECF No. 17).

The Court includes here only those facts that are relevant as to Plaintiff's § 1983 count asserted against Defendant McCuaig.

Plaintiff is a 54-year old woman who "suffers from diagnosed clinical anxiety and depression, for which she receives treatment and is prescribed certain medications, including Xanax."  (Compl. at ¶¶ 9-10).

"At 1:10 a.m. on Wednesday, May 16, 2018, [Plaintiff] was pulled over on northbound I-75 in Independence Township for failing to yield to a stationary emergency vehicle."  (Defs.' Stmt. & Pl.'s Stmt. at ¶ 1).  Plaintiff was pulled over by Michigan State Troopers McCuaig and Nichols.  (Compl. at ¶ 14).

Upon initial contact with Plaintiff, Trooper McCuaig could smell a moderate odor of alcohol coming from her.  (Defs.' Stmt. & Pl.'s Stmt. at ¶ 3; McCuaig Aff.).  The officers administered field sobriety tests and Plaintiff then consented to both a breathalyzer and a blood test.  (*Id*. at ¶ 19 & 25).

Plaintiff alleges that additional tests were conducted by Defendant Whitcomb, a Michigan State Police drug recognition expert, at the police station.  (*Id*. at 28-29).

"Subsequent to the aforementioned traffic stop, a warrant was issued for Plaintiff's arrest."  (Compl. at ¶ 34).  It is undisputed that it was a valid felony arrest warrant, authorizing Plaintiff's arrest, for operating while intoxicated – third offense.  (Defs.' & Pl.'s Stmt. at ¶ 29).

"On or about Friday, October 26, 2018, Plaintiff became aware of the arrest warrant and telephoned the Clerk of the Court to inquire about what she had to do to turn herself in."

(Compl. at ¶ 35).  Plaintiff alleges that she planned to turn herself in the following Friday.

(Compl. at ¶¶ 36-37).

"In the evening of Sunday, October 28, 2018, Defendant McCuaig drove by himself, to

Plaintiff's residence, and knocked on her door."  (Compl. at ¶ 38).  It is at this point where the

parties' versions of events differs.

**Plaintiff's Allegations Regarding Excessive Force**

Plaintiff's Complaint alleges the following with respect to what occurred after Trooper

McCuaig knocked on her door on October 28, 2018:

39.    Upon information and belief, it is highly unusual for an MSP Trooper to
       travel alone to a person's residence in the evening time to execute an
       arrest warrant for an OWI charge.
40.    Plaintiff was already in bed for the night, and her son answered the door.
41.    After Defendant McCuaig told Plaintiff's son that he needed to speak with
       Plaintiff, she answered the door in a tank-top and boxer shorts, and was
       not wearing any under garments since she was already in bed for the night.
42.    Without stating that he had a warrant for Plaintiff's arrest, or presenting
       her with a warrant, Defendant McCuaig said to Plaintiff, "Remember me, I
       arrested you in May?" and laughed.  He ordered Plaintiff to exit her
       residence and come outside with him.
43.    Due to Plaintiff's anxiety, and Defendant McCuaig approaching Plaintiff's
       door alone in the evening time, and his questions about their past
       encounter, Plaintiff perceived Defendant McCuaig as a threat, and her
       immediate inclination was to call 911.
44.    Plaintiff stated that she would not come outside with Defendant McCuaig,
       and began to close the door, at which point Defendant McCuaig pushed
       the door opened, grabbed Plaintiff by her arm and shouted that he was
       arresting her.
45.    Plaintiff took a step back and Defendant McCuaig stepped into her
       apartment and tackled her to the ground.
46.    While on top of Plaintiff, Defendant McCuaig pressed her face into the
       carpet, causing her to suffer rug burns and bruises.
47.    Rather than effect the arrest of Plaintiff, Defendant McCuaig kept
       Plaintiff pinned to the ground, and groped her breasts while making
       thrusting motions on top of her, in full view of Plaintiff's young children.
48.    While Defendant McCuaig was on top of Plaintiff, she felt as though he
       had an erection.

49.     Defendant McCuaig then transported Plaintiff to Oakland County Jail, where she was attended to by a nurse for various scratches, bruises, and rug burns.

(Compl. at ¶¶ 39-49).

**Audio Recording Of Plaintiff's Arrest**

It is undisputed that Trooper McCuaig went to Plaintiff's residence on October 28, 2018, to arrest Plaintiff. Plaintiff's actual arrest, however, was not captured on videotape because it did not occur in front of his patrol car. But even after Trooper McCuaig was out of camera range, sounds transmitted by a microphone worn by him continued to be recorded. The audio is somewhat difficult to hear at times, but some things can clearly be heard. (*See* Defs.' Ex. F).

Contrary to Plaintiff's allegation that Trooper McCuaig did not state that he had a warrant for Plaintiff's arrest (Compl. at ¶ 42), he is clearly heard telling Plaintiff from the outset that he has a warrant for her arrest and that he is going to take her to the Oakland County jail.

Although Plaintiff now acknowledges that she was aware of the arrest warrant two days prior this date, Plaintiff can be heard telling Trooper McCuaig that she does not know what he is talking about. Plaintiff is also heard telling Trooper McCuaig that she is not going to go with him. A struggle is heard as Trooper McCuaig is heard telling Plaintiff to stop, to come with him, and that he has a warrant for her arrest. Plaintiff is heard screaming and yelling.

At 20:46:20 on the recording, Trooper McCuaig and Plaintiff come into view of the camera. Plaintiff is placed into the police car and her seat belt is secured by Trooper McCuaig. McCuaig then tells Plaintiff's children that Plaintiff is being taken to the Oakland County jail. McCuaig then drives away and nothing else of relevance occurs during the remainder of the recording.

6

**Trooper McCuaig's Affidavit**

In support of Defendant's summary judgment motion, Defendants submitted an Affidavit from Trooper McCuaig. It states that he has been a Michigan State Trooper since 2016. (McCuaig Aff. at ¶¶ 2-3). McCuaig states that on "October 28, 2018, I made contact with [Plaintiff] at her residence. I announced the warrant and she resisted my initial attempts to arrest her." (*Id.* at ¶ 8). McCuaig's Affidavit states that he "took Carlson to the ground after she pulled away from me and reached around the corner into her kitchen. I was concerned that there may be a knife block where she was reaching. On the ground, Carlson clenched her hands against her chest and I had to forcefully pull them out from under her to handcuff her. She also did not cooperate when I took her to my patrol car." (*Id*. at ¶ 9). McCuaig denies "as untrue [Plaintiff's] allegations that I used excessive force or otherwise mistreated her." (*Id*.).

**Charges And Convictions Following Plaintiff's Arrest**

Following her arrest, Plaintiff was charged with: 1) "POLICE OFFICER - ASLT/RESIST/O" in violation of Mich. Comp. Laws § 750.81D1; and 2) "ATTEMPT P.O. ASSLT/RESIST/OBST" in violation of Mich. Comp. Laws § 750.81D1(A). Plaintiff ultimately pleaded guilty to this second offense, attempting to assault, resist, or obstruct a police officer in violation of Mich. Comp. Laws § 750.81d(1) and served eleven days in jail. (ECF No. 11-11).

**Plaintiff's Response Brief**

Plaintiff responded to Defendants' motion on September 8, 2021. (ECF No. 16). Although Defendants' motion is brought under Fed. R. Civ. P. 56, and submits evidence to be considered by the Court, Plaintiff did not submit any evidence for the Court's consideration (such as affidavits or declarations). Rather, Plaintiff merely directs the Court to allegations in

her Complaint.

## STANDARD OF DECISION

Defendants bring the instant motion pursuant to both Fed. R. Civ. P. 12(b)(6) and Fed. R.

Civ. P. 56.

Rule 12(b)(6) provides for the dismissal of a case where the complaint fails to state a

claim upon which relief can be granted.  The Court must construe the complaint in the light most

favorable to the plaintiff and accept its allegations as true.  *DirectTV, Inc. v. Treesh*, 487 F.3d

471, 476 (6th Cir. 2007).  To survive a motion to dismiss, the complaint must offer sufficient

factual allegations that make the asserted claims plausible on their face.  *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007).

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment and

provides, in pertinent part that:

> (a) Motion for Summary Judgment or Partial Summary Judgment.  A party may
> move for summary judgment, identifying each claim or defense – or the part of
> each claim or defense – on which summary judgment is sought.  The court shall
> grant summary judgment if the movant shows that there is no genuine issue of
> material fact and the movant is entitled to judgment as a matter of law.   The court
> should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a).

Rule 56 provides that, unless the Court or local rules provides otherwise, a "party may

file a motion for summary judgment at any time until 30 days after the close of all discovery."

Fed. R. Civ. P. 56(b).  The rule further provides:

> (d) When Facts Are Unavailable to the Nonmovant.  If a nonmovant shows by
> affidavit or declaration that, for specified reasons, it cannot present facts essential
> to justify its opposition, the court may:
>     (1) defer considering the motion or deny it;
>     (2) allow time to obtain affidavits or declarations or to take discovery; or

(3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).

"Summary judgment is proper if the *evidence*, taken in the light most favorable to the nonmoving party, shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *Schreiber v. Moe*, 596 F.3d 323, 329 (6th Cir. 2010) (emphasis added).

Construing the evidence in the light most favorable to the non-moving party "usually means adopting the plaintiff's version of the facts." *Coble v. City of White House, Tennessee*, 634 F.3d 865, 868 (6th Cir. 2011). "When videotape footage exists," however, "the reviewing court need not credit the version of the party who asserts facts 'blatantly contradicted' by the videotape; rather it should view the facts in the light depicted by the videotape.*" Cunningham v. Shelby Cty.*, 994 F.3d at 763 (citing *Scott v. Harris*, 550 U.S. 372, 380-81, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007)); *see also Rudlaff v. Gillispie*, 791 F.3d 638, 639 (6th Cir. 2015). The same holds true for audio recordings*. Coble v. City of White House, Tennessee*, 634 F.3d 865, 869-70 (6th Cir. 2011). Thus, evidence that is "not blatantly contradicted by" the audio recording here remains entitled to be viewed in the light most favorable to Plaintiff, the non-moving party. *Id.* at 870.

**ANALYSIS**

Defendants' motion challenges all claims asserted against them by Plaintiff in this action. Because the § 1983 count asserted against Trooper McCuaig is the sole basis for this Court's

jurisdiction over this case, the Court shall begin with the challenges to that count.

**I.      Is Defendant McCuaig Entitled To Qualified Immunity?**

Among other things, the pending motion asserts that Defendant McCuaig is entitled to qualified immunity.

Under the doctrine of qualified immunity, government officials performing discretionary functions generally are shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Phillips v. Roane County*, 534 F.3d 531, 538 (6th Cir. 2008). Determining whether government officials are entitled to qualified immunity generally requires two inquiries: 1) whether, viewing the facts in the light most favorable to the plaintiff, the plaintiff has shown that a constitutional violation occurred; and 2) whether the right was clearly established at the time of the violation.

"[A] qualified immunity defense can be raised at various stages of the litigation including at the pleading stage in a motion to dismiss," in a motion for summary judgment based upon the evidence, or as an affirmative defense at trial. *English v. Duke*, 23 F.3d 1086, 1089 (6th Cir. 1994).

"Once the qualified immunity defense is raised, the burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity." *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006).

"Each defendant's liability must be assessed individually based on his [or her] own actions." *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010). It is well established that "damage claims against government officials arising from alleged violations of constitutional

rights must allege, with particularity, facts that demonstrate what *each* defendant did that

violated the asserted constitutional right." *Lanman v. Hinson,* 529 F.3d 673, 684 (6th Cir. 2008);

*Terrance v. Northville Reg. Psych. Hosp.,* 286 F.3d 834, 842 (6th Cir. 2002).

The first step in the qualified immunity analysis is to consider whether, viewing the

evidence in the light most favorable to Plaintiff, could Plaintiff establish a Constitutional

violation with respect to Trooper McCuaig. If so, the Court also considers if that right was

clearly established.

Here, Plaintiff asserts a § 1983 excessive-force claim against Trooper McCuaig.

"The Fourth Amendment permits an officer to use a reasonable amount of force when

making an arrest." *Jackson v. Wilkins*, 517 F. App'x 311, 316 (6th Cir. 2013). Thus, excessive

force claims are analyzed under an objective reasonableness standard. *Graham v. Connor*, 490

U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). As to that analysis, the Sixth Circuit has

explained:

> In *Graham*, the Court explained that the application of the reasonableness
> standard in this context "requires careful attention to the facts and circumstances
> of each particular case, including the severity of the crime at issue, whether the
> suspect poses an immediate threat to the safety of the officers or others, and
> whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*.
> at 396, 109 S.Ct. 1865 (citation omitted). In addition, "[t]he 'reasonableness' of a
> particular use of force must be judged from the perspective of a reasonable officer
> on the scene, rather than with the 20/20 vision of hindsight." *Id*.

*Cunningham*, 994 F.3d 761. The above three factors, known as the *Graham* factors, "inform this

inquiry, although the factors are by no means exhaustive." *Harmon v. Hamilton Cty*., 675 F.

App'x 532, 540 (6th Cir. 2017).

The Sixth Circuit has explained that "[a]ctive resistance includes 'physically struggling

with, threatening, or disobeying officers.'" *Rudlaff v. Gillispie*, 791 F.3d 638, 641 (6th Cir. 2015)

11

(quoting *Cockrell v. City of Cincinnati*, 468 F. App'x 491, 495 (6th Cir. 2012) (collecting

cases)); *see also Thomas v. City of Eastpointe*, 715 F. App'x 458, 460 (6th Cir. 2017)

(Explaining that "active resistence" is found "where a suspect physically struggles with police,

threatens or disobeys officers, or refuses to be handcuffed."); *Goodwin v. City of Painesville*, 781

F.3d 314, 323-34 (6th Cir. 2015) ("Active resistance" "can take the form of 'verbal hostility' or a

'deliberate act of defiance.'").

Defendant McCuaig asserts that a consideration of the *Graham* factors weighs in his

favor and should result in the Court finding that he is entitled to qualified immunity.

In response, Plaintiff contends that McCuaig is not entitled to qualified immunity as to

her excessive-force claim, arguing:

> In this case, Plaintiff was in bed late on the even of October 28, 2018
> when Officer McCuaig knocked on her door and demanded that her son
> wake her. Startled, Plaintiff came to the door in only a tank top and
> boxer short with no underwear because she was already in bed. She recognized
> Officer McCuaig from the May 15, 2018 arrest and became scared and anxious
> when he demanded that she come outside. She attempted to close the door to
> call 9-1-1 to determined if Officer McCuaig was there for a legitimate reason
> when he pushed the door open grabbed her from behind with his hands groping
> her breasts and tackled her to the ground causing rug burns and bruises. He
> landed on top of her and began grinding and thrusting his erect penis into
> Plaintiff's buttocks.
> Under any standard Officer McCuaig's conduct was unreasonable.
> He appeared at Plaintiff's home all alone, late at night demanding she come with
> him due to a warrant regarding the May 18 incident that was not a serious
> matter, in which Plaintiff's blood tests revealed she was not intoxicated or under
> the influence of a controlled substance. Moreover, Plaintiff voluntarily came to
> the door, did not pose an immediate threat to the safety of Officer McCuaig or
> others, she did not resist arrest, but merely wanted to confirm Officer McCuaig's
> story by calling 911. Significantly, Plaintiff's concerns that Officer McCuaig had
> ulterior motives were confirmed when he landed on top of her with an erection
> which he grinded against her buttocks. It was completely unreasonable to tackle
> her to the ground and cause the rug burns and bruising. Ms. Carlson would have
> voluntarily went with Officer McCuaig once she verified he was not going to
> harm her in any way, instead he used excessive force under the

circumstances in violation of Plaintiff's constitutional rights.
(Pl.'s Br. at 12-13).

Notably, in responding to Defendants' properly-supported summary judgment motion,
Plaintiff has not put forth *any evidence* for the Court's consideration. Rather, her response
merely directs the Court to the *allegations* in her Complaint.

As Defendants note in their Reply Brief, that is not sufficient. That is because a
complaint is merely allegations, "not competent material evidence of any facts that can help
[Plaintiff] avoid qualified immunity in this procedural context. For summary judgment, it is
[Plaintiff's] burden as the non-movant to adduce affirmative evidence that creates some question
of material fact." (Defs.' Reply Br. at 1).

Defendants' Reply Brief further notes that Plaintiff has not availed herself of Fed. R. Civ.
P. 56(d), as plaintiffs sometimes do when faced with a summary judgment motion before
discovery has concluded. That rule allows the nonmoving party to explain why they cannot
present the necessary facts to oppose the motion. Plaintiff has not done so. Moreover, there
would be no reason why Plaintiff could not have submitted her own affidavit or declaration to
support her allegations. She simply did not do so.

That leaves the Court to consider whether Plaintiff can establish an excessive force claim
against McCuaig, based on the evidence that is before the Court.

It is undisputed that Trooper McCuaig went to Plaintiff's residence at approximately 8:00
p.m on October 28, 2018, to arrest Plaintiff. It is also undisputed that McCuaig had a valid
felony arrest warrant for Plaintiff's arrest. And, according to Plaintiff's own complaint, Plaintiff
was aware of that arrest warrant prior to that date. (Compl. at ¶ 35) (On or about Friday, October

26, 2018, Plaintiff became aware of the arrest warrant.").

The first *Graham* factor is the severity of the crime.  Here, Plaintiff was charged with a fairly serious felony – operating while intoxicated third offense.

The most important *Graham* factor, given the circumstances presented in this particular case, is whether the suspect was actively resisting arrest. That is because Sixth Circuit case law reflects that a police officer may use force to subdue a suspect who actively resists arrest but may not use force against a suspect who is compliant or has stopped resisting.

Here, the evidence before this Court shows that Plaintiff resisted arrest after Trooper McCuaig advised Plaintiff that he had a warrant for her arrest and was going to take her to the Oakland County jail.  On the audio recording, Plaintiff can be heard verbally resisting arrest after McCuaig advised Plaintiff that he had a warrant for her arrest and was going to take her to the Oakland County jail.  Plaintiff's own complaint acknowledges that Plaintiff refused to go with McCuaig, attempted to close the door on him, and retreated back into her apartment.  (Compl. at ¶¶ 44-45).  Trooper McCuaig's Affidavit also states that Plaintiff resisted arrest.  (McCuaig Aff. at ¶ 8).

Thus, the evidence presented to the Court shows that Plaintiff actively resisted arrest, both verbally and physically.  "It is against this backdrop that the Court must weigh the officer's conduct." *Williams v. Sandel,* 433 F. App'x 353, 362 (6th Cir. 2011).

The second *Graham* factor is whether the suspect poses an immediate threat to the safety of the officers or others. Here, Trooper McCuaig's Affidavit states that he "took Carlson to the ground after she pulled away from me and reached around the corner into her kitchen. I was concerned that there may be a knife block where she was reaching."  Thus, the evidence before

the Court reflects that Trooper McCuaig had a reasonable basis to believe that Plaintiff posed an immediate threat to his safety.

McCuaig's Affidavit further states that while "[o]n the ground, Carlson clenched her hands against her chest and I had to forcefully pull them out from under her to handcuff her." McCuaig also denies Plaintiff's allegations that he used excessive force or otherwise mistreated her, as Plaintiff alleged in her complaint.

In response to Defendants' motion, Plaintiff has merely directed the Court to the allegations in her complaint. As such, there is *no evidence* before this Court to support Plaintiff's allegations that McCuaig used excessive force, or acted inappropriately by "groping her breasts while making thrusting motions on top of her." (Compl. at ¶ 47).

The evidence before this Court reflects that, under the circumstances presented here, Trooper McCuaig's actions in taking Plaintiff to the ground after she was actively resisting arrest, in order to secure handcuffs on her, was objectively reasonable.

Thus, the Court concludes that, even when viewing the evidence presented to the Court in the light most favorable to Plaintiff, she cannot establish that Trooper McCuaig violated her constitutional rights by having used excessive force during the course of her lawful arrest.[1] As such, McCuaig is entitled to qualified immunity.

## II.     Supplemental Jurisdiction

---

[1]Moreover, Plaintiff has not identified any case law that would clearly establish that it is a constitutional violation for an officer to "take down" a suspect who is actively resisting arrest. *See Stanfield v. City of Lima*, 727 F. App'x 841, 850 (6th Cir. 2018). (Affirming district court's grant of qualified immunity to officer because the plaintiff "cited no case that 'clearly establishes' that it is a violation of the law for an officer to 'take down' a suspect who is resisting arrest.").

This action is in federal court based upon federal-question jurisdiction over Plaintiff's

§ 1983 count, asserted against Defendant McCuaig alone.

Plaintiff asks the Court to exercise supplemental jurisdiction over her two state-law

counts: 1) disability discrimination under Michigan's Persons With Disabilities Civil Rights Act,

asserted against all three named Defendants; and 2) sex discrimination, in violation of Michigan

ELCRA, asserted against Defendant McCuaig.

Supplemental jurisdiction is a "'doctrine of discretion." *City of Chicago v. International*

*College of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *United Mine Workers of America v.*

*Gibbs*, 383 U.S. 715, 726 (1966)).  "[D]istrict courts can decline to exercise supplemental

jurisdiction over pendant claims for a number of valid reasons." *City of Chicago, supra.*

The supplemental jurisdiction statute, 28 U.S.C. § 1367,  provides that district courts may

decline to exercise supplemental jurisdiction over a claim when: 1) the claim raises a novel or

complex issue of state law; 2) the claim substantially predominates over the claim or claims over

which the district court has original jurisdiction;  3) the district court has dismissed all claims

over which it has original jurisdiction, or 4) in exceptional circumstances, there are other

compelling reasons for declining jurisdiction.  28 U.S.C. § 1367©.

A district court's decision as to whether to exercise supplemental jurisdiction over a

plaintiff's state-law claims is reviewed for abuse of discretion. *Soliday v. Miami Cnty*., Ohio, 55

F.3d 1158, 1164 (6th Cir. 1995).

Here, Plaintiff's § 1983 count asserted against Defendant McCuaig is the sole basis for

this Court's jurisdiction.  As set forth above, this Court is granting summary judgment in favor

of McCuaig as to that count because he is entitled to qualified immunity.  Thus, this Court is

dismissing the only claims over which it has original jurisdiction.

In addition, even if that were not the case, this Court would decline to exercise

supplemental jurisdiction over Plaintiff's novel state-law claims, that would predominate over

the federal claim asserted against Defendant McCuaig.

## CONCLUSION & ORDER

For the reasons set forth above, IT IS ORDERED that summary judgment is GRANTED

in favor of Defendant McCuaig on Plaintiff's § 1983 claim against him (Count II) because

McCuaig is entitled to qualified immunity.

IT IS FURTHER ORDERED that the Court DECLINES TO EXERCISE

SUPPLEMENTAL JURISDICTION over any state-law claims in this action and DISMISSES

WITHOUT PREJUDICE Counts I and III.

IT IS SO ORDERED.

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  October 22, 2021